IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RANDY CAMPBELL,
    Plaintiff,

vs.                                    Case No.: 3:06cv365/RV/EMT

SHERIFF R. JOHNSON, et al.,
    Defendants.
_____/

### **ORDER**

      This cause is before the court upon Plaintiff's amended civil rights complaint filed pursuant to 42 U.S.C. § 1983 (Doc. 8). Leave to proceed in forma pauperis has been granted (Doc. 6). From a review of the complaint, it is evident that Plaintiff has failed to follow the instructions on the complaint form in that he has included allegations of constitutional violations that are not related to the same basic incident or issue. Additionally, Plaintiff has failed to state a basis for liability as to the named Defendants. The court will therefore allow Plaintiff an opportunity to clarify his allegations in a second amended complaint.

      At all times relevant to this action, Plaintiff was an inmate at the Walton County Jail (Jail). Plaintiff names two Defendants: R. Johnson, Sheriff of the Walton County Sheriff's Department, and Sgt. J. Hall, a correctional officer at the Jail (Doc. 8 at 1-2). Plaintiff alleges that on May 14, 2004, he was arrested and detained at the Jail (Doc. 8 ¶ 4). On June 29, 2004, Judge Kelvin Wells, the judge presiding over his criminal case, set bond at $30,000.00, to be secured with cash, a professional bond, or property approved by the judge (Doc. 8 ¶ 5).[1] In December of 2004, Plaintiff's mother obtained documentation to post bond with property located in neighboring Okaloosa County (*id*. ¶ 6). The trial judge escorted her to the Jail, informed a correctional officer that he approved

---

[1] Unless otherwise noted, all facts are derived from the Statement of Facts section of Plaintiff's amended complaint (Doc. 8, ¶¶ 4-29).

use of the property as bond, and directed the Sheriff's Department to "complete the necessary paper work" to facilitate Plaintiff's release (*id.* ¶ 7).  However, the officer informed Plaintiff's mother that she needed further documentation, including proof of ownership and proof that the property was not homestead property (*id.* ¶ 8).  On January 20, 2005, Plaintiff's mother returned to the Jail with the documentation, but the documents were rejected because they did not bear the state seal (*id.* ¶ 9).  On February 17, 2005, Plaintiff's mother again returned to the Jail with the documentation bearing the state seal and presented it to Defendant Hall (*id.* ¶ 11).  Defendant Hall advised her that Sheriff Johnson's policies prohibited the acceptance of out-of-county property as security for a property bond (*id.*).

On April 14, 2005, Plaintiff wrote a grievance to Captain L. Mims, Lieutenant T. Prater, and Sergeant Holmes complaining about Sheriff Johnson's policy, but the grievance was "returned" (*id.* ¶ 14).  One week later, on April 21, 2005, Plaintiff, through counsel, presented the property documents to the trial court and argued that the Sheriff's Department failed to follow the court's order setting bond (*id.* ¶ 16).  The judge stated that because of Sheriff Johnson's policy, he would not approve the property as security for the bond (*id.* ¶ 17).  Plaintiff wrote letters to the trial judge and the Walton County Board of Commissioners complaining about Sheriff Johnson's policy (*id.* ¶¶ 18, 19).  On May 11, 2005, an officer informed Plaintiff that the Jail received a facsimile directing that the Okaloosa County property be accepted, and that Plaintiff be released (*id.* ¶ 20).  Plaintiff's criminal trial was held the next day, and he was convicted and sentenced to a term of seventy-eight (78) months of incarceration (*id.* ¶ 21).

In unrelated claims, Plaintiff alleges that while he was incarcerated at the Jail, unidentified officials at the Jail denied him access to medical treatment by denying him use of a prescribed walking cane and assigning him to general population, retaliated against him by placing him in solitary confinement, and failed to protect him from an attack by another inmate (*id.* ¶¶ 23-28).

Plaintiff alleges violations of the Fifth, Eighth, and Fourteenth Amendments, and generally alleges "discriminatory" conduct on the part of the Defendants (*id.* ¶¶ 30-34).  As relief, he seeks compensatory damages for the "pain and mental anguish" he has suffered as well as "his attorney fee and cost" and "such additional relief" as the court may deem proper (Doc. 8 at 12).

It is clear from a review of Plaintiff's amended complaint that his claims against Defendants Johnson and Hall for failing to accept the Okaloosa County property in satisfaction of the bond until ordered to do so, presumably by the county commission, are unrelated to his claims against unidentified Jail officials for denial of medical treatment, retaliation, and failure to protect. As the complaint form advises, facts and claims that are unrelated to the same basic incident or legal issue must be addressed in a separate civil rights complaint. *See* Fed. R. Civ. P. 20. Furthermore, as Plaintiff points out, he filed a separate civil rights action regarding the alleged deprivation of medical care, *see* Campbell v. Mims, 3:05cv113/EMT, which is currently pending before this court. Therefore, Plaintiff should delete the facts relating to claims against Jail officials for denial of medical treatment, retaliation, and failure to protect from the complaint in the instant action.

With regard to the substance of Plaintiff's claims regarding Defendants' initial refusal to accept the Okaloosa property in satisfaction of the bond, Plaintiff has failed to state a constitutional violation. As Plaintiff was previously advised, to the extent he is stating a claim of excessive bail under the Eighth Amendment, there is no established constitutional right to a certain type of bond. *See* United States v. James, 674 F.2d 886, 891 (11th Cir. 1982) ("As long as the primary reason in setting bond is to produce the defendant's presence, the final amount, type, and other conditions of release are within the sound discretion of the releasing authority. . . ."); Walden v. Carmack, 156 F.3d 861, 874 (8th Cir. 1998) (holding where a sheriff required a cash bond and refused to accept a property bond to satisfy bail, no "constitutional right to a certain type of bond" was established). The test for whether bail is excessive under the Eighth Amendment is whether "the Government's proposed conditions of release or detention not be 'excessive' in light of the perceived evil." Broussard v. Parish of Orleans, 318 F.3d 644, 651 (5th Cir. 2003) (quoting United States v. Salerno, 481 U.S. 739, 754, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987)). A detainee's inability to post bail does not inherently make bail excessive. United States v. McConnell, 842 F.2d 105, 107 (5th Cir. 1978) ("[B]ail setting is not constitutionally excessive merely because a defendant is financially unable to satisfy the requirement."); *see also* Pugh v. Rainwater, 572 F.2d 1053, 1069 (5th Cir. 1978) (Coleman, J., concurring) ("[P]eople may not be denied reasonable bail in bailable cases, but they are not entitled to bail on their own terms. . . . If reasonable bail is set and the defendant cannot make it the Constitution does not command that he shall be released."). In the instant case, Plaintiff

has not challenged the amount of bail as unreasonable or excessive, but merely the type of property accepted for the bond, which is insufficient to state a claim for excessive bail. Furthermore, even if Plaintiff could state a claim for excessive bail on these facts, Defendants would be entitled to raise qualified immunity as a defense because there is no clearly established Eighth Amendment right to a certain type of bond. *See* Walden, 156 F.3d at 874.

Additionally, Plaintiff has still failed to state a basis for his procedural due process claim, as he concedes that he received two hearings regarding his bond: one regarding his motion for the property bond (which was granted) and one regarding the refusal to accept the Okaloosa County property for the bond (during which the judge declined to accept the property). He has likewise failed to state a basis for a substantive due process claim, that is, that he has a fundamental right to access the bail system once bail has been set by the releasing authority, since courts have held that access to the bail system once an individual is found eligible for bail does not constitute a fundamental right, and government limitations on access to the bail system need only be reasonable. *See* Broussard, 318 F.3d at 657 (holding the district court's fundamental rights analysis "crumbles, however, under the weight of . . . related Supreme Court precedent which indicate that these [bail] fees do not implicate fundamental rights and thus need only be reasonable").

Finally, despite the court's advising Plaintiff that he may not recover monetary damages for his alleged emotional injuries because he failed to satisfy the physical injury requirement of 42 U.S.C. § 1997e(e), Plaintiff included a request for monetary damages in the amount of $250,000.00 without any showing that he suffered a physical injury. If Plaintiff chooses to file a second amended complaint, he should delete his request for compensatory and punitive damages.

Plaintiff should carefully review the foregoing to determine whether he desires to proceed with this action. If Plaintiff determines that he does not, he should file with the court a notice of voluntary dismissal. If Plaintiff chooses to proceed with this action, he must completely fill out a new civil rights complaint form, marking it "**Second Amended Complaint**." Plaintiff must limit his allegations to claims related to the same basic incident or issue and name as Defendants only those persons who are responsible for the alleged constitutional violations. Plaintiff must place their names in the style of the case on the first page of the civil rights complaint form, and include their addresses and employment positions in the "Parties" section of the form. In the statement of facts,

Plaintiff should clearly describe how each named Defendant is involved in each alleged constitutional violation, alleging the claims as to each Defendant in separately numbered paragraphs and including specific dates and times of the alleged unconstitutional acts.[2]  If Plaintiff cannot state exactly how a particular Defendant harmed him, he should delete or drop that person as a Defendant from his complaint.  Plaintiff's request for relief should be limited to only that which he could recover if he succeeds on his claims.  Plaintiff is advised that once an amended complaint is filed, all earlier complaints and filings are disregarded.  Local Rule 15.1, Northern District of Florida.

Accordingly, it is **ORDERED**:

1. The clerk of court is directed to forward to Plaintiff a civil rights complaint form for use by prisoners in actions under 42 U.S.C. §1983.  This case number should be written on the form.

2. Within **THIRTY (30) DAYS** from the date of docketing of this order, Plaintiff shall file a second amended civil rights complaint, which shall be typed or clearly written, submitted on the court form, and marked "Second Amended Complaint."  In the alternative, Plaintiff shall file a notice of voluntary dismissal within the same time period.

3. Failure to comply with this order may result in dismissal of this action.

**DONE AND ORDERED** this 27th day of November 2006.

>/s/ *Elizabeth M. Timothy*
>**ELIZABETH M. TIMOTHY**
>**UNITED STATES MAGISTRATE JUDGE**

---

[2]The court notes that Plaintiff filed only the first six pages of the eight-page civil rights complaint form.  Plaintiff is advised that Rule 5.1(J) of the Local Rules of the Northern District of Florida provides that no pro se civil rights complaint may be considered by the court unless all pages of the appropriate form have been properly completed and filed by the litigant.  As the complaint form states, Plaintiff may copy pages of the form if additional pages are necessary to supply all the relevant information.