IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


RANDY CAMPBELL,
    Plaintiff,

vs.                                        Case No. 3:06cv365/RV/EMT

SHERIFF RALPH JOHNSON,
    Defendant.
_____/

## REPORT AND RECOMMENDATION

       This case filed pursuant to 42 U.S.C. § 1983 is now before the court on Defendant's special reports and supporting documents (Docs. 29, 47). Plaintiff, an inmate of the Florida correctional system proceeding pro se and in forma pauperis, filed a response to the special report and supporting documents (Doc. 37). The court entered orders advising the parties of the importance and ramifications of Rule 56 summary judgment consideration, and informing the parties that the special reports would be construed as motions for summary judgment as of November 16, 2007 (Docs. 30, 44). Upon review of the parties' submissions, it is the opinion of the undersigned that Sheriff Johnson's motion for summary judgment should be granted.

I.     PROCEDURAL HISTORY

       Plaintiff filed his second amended complaint suing Sheriff Johnson and alleging that Sheriff Johnson violated his constitutional rights to due process and freedom from excessive bail guaranteed by the Fifth, Eighth, and Fourteenth Amendments by excessively detaining him in the Walton County Jail (Jail) after Walton County Judge Kelvin C. Wells set bail and approved property as security for a property bond (Doc. 12, Statement of Facts ¶¶ 2, 5–15; Doc. 37 at 9–11). As relief, Plaintiff seeks a declaratory judgment and punitive damages in an amount sufficient to admonish Sheriff Johnson and deter future officials from the same conduct (Doc. 12 at 8). Plaintiff also

includes a general prayer for relief, which the court construes as including a request for nominal damages (*id.*).

Sheriff Johnson, in his motion for summary judgment, asserts that he is entitled to summary judgment because the undisputed material facts show that he was not personally involved in the alleged constitutional deprivations, and there is no evidence otherwise establishing a causal connection between his conduct and Plaintiff's allegedly illegal detention (Doc. 29 at 4–9).

II.     FACTS

The following material facts are without substantial controversy.[1]  At all times relevant to this action Plaintiff was a pre-trial detainee at the Walton County Jail (Jail), and Defendant was Sheriff of Walton County, with ultimate supervisory authority with respect to the operation of the Jail (Doc. 29, Affidavit of Ralph L. Johnson ¶¶ 1, 3).  On May 14, 2004, Plaintiff was booked into the Jail, pursuant to his arrest on felony DUI charges (Doc. 29, Affidavit of James Hall ¶ 2.A.; Doc. 37, Declaration of Randy Campbell ¶ 3).  On June 29, 2004, Plaintiff entered a not guilty plea, and Judge Kelvin C. Wells set bail in the amount of $30,000.00, to be satisfied with cash, a professional bond, or a property bond upon Judge Wells' approval (Doc. 29, case disposition document from Walton County Circuit Court, Case Number 04CF423, dated 6/29/04; Doc. 37, Campbell Decl. ¶ 4).

On August 19, 2004, the Okaloosa County Sheriff's Office notified the Jail that they had an active warrant for Plaintiff's arrest, and requested that the Jail place a hold/detainer on him and advise them when Plaintiff was "ready for pick up" or if he posted bond (Doc. 29, Hall Aff. ¶¶ 2.A., B.).  This "hold" meant that Plaintiff could not be released from the Jail to the general public; if Plaintiff was released, the Jail was required to release him to the Okaloosa County Jail (*id.* ¶ 2.B.).

---

[1] The court conveys as facts those factual allegations of Plaintiff's verified amended complaint (Doc. 12), Defendant's affidavits in support of his motion for summary judgment, including attachments (Docs. 29, 47), and Plaintiff's declaration, affidavits, and attachments in support of his response to Defendant's special report (Doc. 37), to the extent they comply with the requirements for affidavits specified in Rule 56 – that they "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); *see, e.g.*, Dickinson v. Wainwright, 626 F.2d 1184, 1186 (5th Cir. 1980); Murrell v. Bennett, 615 F.2d 306, 310 n.5 (5th Cir. 1980).  If a fact is not included in this section, it is because the court has determined that it is not a material fact, the proponent's assertion of the fact is not based upon personal knowledge, or the fact is presented as hearsay and could not be reduced to admissible evidence at trial or reduced to admissible form.

On November 8, 2004, the Walton County court granted Plaintiff's motion for bond reduction and reduced bail to $25,000.00 (Doc. 37, Campbell Decl. ¶ 4; Doc. 29, case disposition document from Walton County Circuit Court, Case Number 04CF423, dated 11/8/04).  At a hearing on December 13, 2004, the bond was modified to a property bond (*see* Doc. 8, Attach. C, court docket, docket entry dated 12/13/2004).  Around that time in 2004, Plaintiff's mother and sister, Harrriett Crowder and Debarah Griffin, respectively, presented real estate documents regarding property located in Okaloosa County, Florida, to Judge Wells and requested that he approve the property as security for a property bond (Doc. 37, Appx. A, Affidavit of Harriett Crowder ¶ 6, Affidavit of Debarah Griffin ¶¶ 3–4, attached Notice of Proposed Property Taxes).  Judge Wells approved the documents and escorted Ms. Crowder and Ms. Griffin to the Jail (Crowder Aff. ¶ 7, D. Griffin Aff. ¶ 4).  The booking officer advised Ms. Crowder and Ms. Griffin that they needed to present proof from the tax appraiser's office that the property was not homestead (Crowder Aff. ¶ 8, D. Griffin Aff. ¶ 5).  Judge Wells informed the booking officer that he approved the real estate as security for a property bond and directed the officer to process the bond to facilitate Plaintiff's release after it was confirmed that the property was non-homestead (Crowder Aff. ¶ 7, D. Griffin Aff. ¶ 4; *see also* Campbell Decl. ¶ 10, Appx. B).  At an unspecified date in 2005, Kimberly Griffin, Plaintiff's niece, accompanied Ms. Crowder to Walton County to attend one of Plaintiff's court hearings (Doc. 37, Appx. A, Affidavit of Kimberly Griffin ¶ 2).  After the hearing, Ms. Crowder and Ms. Griffin went to the Jail and presented the Okaloosa County real estate documents, including the required proof from the tax appraiser's office that the property was not homestead (Crowder Aff. ¶ 9, K. Griffin Aff. ¶ 4).  The Jail administrator stated that Sheriff Johnson had directed them not to accept the real estate documents for Plaintiff's bail and refused to release Plaintiff (Crowder Aff. ¶ 9, K. Griffin Aff. ¶ 4).

On April 13, 2005, Plaintiff submitted an Inmate Request directed to Captain Mimms, Lieutenant Prater, and Sergeant Holmes in which he complained that the Jail was refusing to release him even though Judge Wells had approved the property bond so long as it was confirmed that the property was not homestead (Doc. 37, Campbell Decl. ¶ 10, Appx. B).  Officer McKee responded that Plaintiff should ask his attorney to file a motion for bond verification and maybe he could persuade the judge to approve a property bond (*id.*).  At a pre-trial hearing on April 21, 2005,

Plaintiff's public defender requested that the court accept the Okaloosa County property documents for the property bond (*id*. ¶ 11). The presiding judge denied the request on the ground that, although he had previously approved the property as security, the Sheriff's Department was responsible for processing the bond, and the Jail administration had contacted his office and informed him that Sheriff Johnson's policy prohibited Jail administrators from completing property bonds where the property was not located in Walton County (*id*.). Shortly after the hearing, Plaintiff questioned Lieutenant Toby Prater and Officer Gary Hubbard about his continued detention, and they responded that the Jail was not going to release him on a property bond using property located in Okaloosa County because if Plaintiff failed to appear, the Jail would be required to hire an attorney to force a sale of the property, and the Jail was not going to do that (Doc. 37, Affidavit of Randy Campbell ¶ 11).[2] Plaintiff wrote a letter to Judge Wells objecting to Sheriff Johnson's failure to release him on a property bond (Doc. 37, Campbell Decl. ¶ 13, Appx. D). On April 27, 2005, Plaintiff wrote a letter to the Walton County Commission notifying them of Sheriff Johnson's failure to process the property bond despite Judge Wells' approval of the property as security (*id.* ¶ 14, Appx. E).

On May 9, 2005, a jury was selected for Plaintiff's criminal trial, and the trial was set for May 12, 2005 (*see* Doc. 37, Campbell Decl. ¶ 16, Appx. F). On May 11, 2005, Sheriff Johnson issued a memorandum to Sergeant Hall, a corrections officer at the Jail, stating, "This memo is to advise for you [sic] to accept the property bond on, [sic] Randy Campbell, which was presented by his mother per agreement by Judge Wells." (Doc. 29, Johnson Aff. ¶ 6, attachment; Hall Aff. ¶ 3). If Plaintiff had been released that day, he would have been released to the custody of the Okaloosa County Sheriff's Office pursuant to the hold/detainer (Doc. 29, Hall Aff. ¶ 3, 5). On May 12, 2005, Plaintiff entered a guilty plea (*see* Doc. 37, Campbell Decl. ¶ 16, Appx. F). On May 17, 2005, Plaintiff was adjudicated guilty and sentenced to 78 months of incarceration (Doc. 29, Hall Aff. ¶ 4.F., attachment; Doc. 37, Campbell Decl. ¶ 16). On May 18, 2005, Plaintiff was released to the custody of Okaloosa County Sheriff's Office (Doc. 29, Hall Aff. ¶ 4.G., attachment; Doc. 37, Campbell Decl. ¶ 17). On May 19, 2005, Plaintiff was released on his own recognizance by Judge Patricia S. Grinstead of Okaloosa County, and the next day he was transported back to the Walton

---

[2]Plaintiff submitted both a declaration and an affidavit, which both conform to the requirements of Rule 56.

Case No.: 3:06cv365/RV/EMT

County Jail (Doc. 37, Campbell Decl. ¶ 17; Doc. 29, Hall Aff. ¶ 4.H.–4.I., attachment). Plaintiff was transferred to the custody of the Florida Department of Corrections on June 1, 2005 (Doc. 37, Campbell Aff. ¶ 17; Doc. 29, Hall Aff. ¶ 4.J.).

III.   LEGAL STANDARDS

   A.   Summary Judgment Standard

In order to prevail on their motion for summary judgment, Defendant must show that Plaintiff has no evidence to support his case or present affirmative evidence that Plaintiff will be unable to prove his case at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2553–54, 91 L. Ed. 2d 265 (1986). If Defendant successfully negates an essential element of Plaintiff's case, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law." *Id.*; *accord* Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). Further, Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence or conclusory allegations is insufficient. Celotex Corp., 477 U. S. at 324 (quoting Fed. R. Civ. P. 56(e)). Plaintiff must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Id.*; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997) ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by h[is] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'") (quoting Celotex Corp., 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(c), (e))); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994). The Eleventh Circuit has consistently held that conclusory allegations without specific supporting facts have no probative value, and are legally insufficient to defeat summary judgment. *See* Leigh v. Warner Bros., Inc., 212

F.3d 1210, 1217 (11th Cir.2000); Sammons v. Taylor, 967 F.2d 1533, 1544-45 & n.5 (11th Cir. 1992).

Evidence presented by Plaintiff in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to Plaintiff. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); Jones v. Cannon, 174 F.3d 1271, 1282 (11th Cir. 1999). A motion for summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; Celotex Corp., 477 U.S. at 322.

      B.      Due Process Standard

In his Second Amended Complaint, Plaintiff claims that pursuant to a policy of Sheriff Johnson, Jail staff refused to release him on a property bond even though a judicial officer had approved his release on a property bond and had approved certain real property as security for the bond, and this policy caused him to be excessively detained and falsely imprisoned in violation of his due process rights under the Fifth and Fourteenth Amendments (*see* Doc. 12, Statement of Facts and Statement of Claims).

The Eleventh Circuit has recognized the constitutional right, protected by the Fourteenth Amendment, to be free from continued detention after it was or should have been known that the detainee was entitled to release. *See* Cannon v. Macon County, 1 F.3d 1558, 1562–63 (11th Cir. 1993) (citing Douthit v. Jones, 619 F.2d 527 (5th Cir. 1980); Divard v. Pulaski County, 959 F.2d 662 (7th Cir. 1992); Sanders v. English, 950 F.2d 1152 (5th Cir. 1992)). A § 1983 claim alleging false imprisonment must satisfy the elements of common law false imprisonment, which are "(1) intent to confine, (2) acts resulting in confinement, and (3) consciousness of the victim of confinement or resulting harm." Cannon, *supra* (quoting Douthit, 619 F.2d at 532). Additionally, to establish such a violation, Plaintiff must show that Defendant acted with deliberate indifference to Plaintiff's due process rights. West v. Tillman, 496 F.3d 1321, 1327 (11th Cir. 2007) (citing Cannon, 1 F.3d at 1563). "Human error does not equal deliberate indifference." West, *supra*. Plaintiff must show that Defendant had "(1) subjective knowledge of a risk of serious harm; [and] (2) disregard[ed] . . . that risk; (3) by conduct that is more than mere negligence." West, *supra*

(citing Cagle v. Sutherland, 334 F.3d 980, 987 (11th Cir.2003) (internal quotation marks and citation omitted) (alteration in original)). The deliberate indifference standard is "a difficult burden for a plaintiff to meet," Popham v. City of Talladega, 908 F.2d 1561, 1563 (11th Cir. 1990), and the court is competent to decide as a matter of law whether Plaintiff has carried his burden. West, *supra*, (citing Gobert v. Caldwell, 463 F.3d 339, 352 (5th Cir. 2006) (concluding "as a matter of law" that, while "trier of fact might find negligence" based on the evidence, a finding of "deliberate indifference . . . could not be sustained"); Pietrafeso v. Lawrence County, 452 F.3d 978, 983–84 (8th Cir. 2006) (reviewing district court's grant of judgment as a matter of law for defendants and concluding that, at most, plaintiff had presented evidence of negligence, not deliberate indifference); Campbell v. Sikes, 169 F.3d 1353, 1368–69 (11th Cir. 1999) (rejecting expert testimony as valid evidence of defendant's subjective knowledge where record did not otherwise create genuine issue of fact on that element and distinguishing other cases where "the egregious facts and circumstances . . . created the requisite factual issue of deliberate indifference or wanton conduct.")).

    C.    Eighth Amendment Standard

Plaintiff also claims that Sheriff Johnson's policy of refusing to release detainees on court-approved property bonds where the property is not located in Walton County violated his right to be free from excessive bail under the Eighth Amendment (*see* Doc. 12 at 7–8). The Supreme Court has not frequently considered the contours of the Eighth Amendment's proscription of excessive bail. In Stack v. Boyle, the Court held that "[b]ail set at a figure higher than an amount reasonably calculated [to ensure the defendant's presence at trial] is 'excessive' under the Eighth Amendment." 342 U.S. 1, 5, 72 S. Ct. 1, 96 L. Ed. 3 (1951). More recently, in United States v. Salerno, the Supreme Court acknowledged that, in addition to the authority to detain due to flight risk, the Government may pursue "other admittedly compelling interests through regulation of pretrial release," for example, the interest in protecting an individual or the community from an identified and articulable threat. 481 U.S. 739, 753–54, 751, 107 S. Ct. 2095, 2103, 95 L. Ed. 2d 697 (1987). The Court further explained that the excessiveness of the Government's action is determined by "the interest the Government seeks to protect by means of [its restriction]." *Id.* at 754. Although Salerno addressed a constitutional challenge to the federal Bail Reform Act, the case confirms that the Excessive Bail Clause prevents the imposition of bail conditions that are excessive in light of the

valid interests the state seeks to protect by offering bail. *Id.* The state may not set bail to achieve invalid interests, *see* Stack, 342 U.S. at 5; Wagenmann v. Adams, 829 F.2d 196, 213 (1st Cir. 1987) (affirming a finding of excessive bail where the facts established the state had no legitimate interest in setting bail at a level designed to prevent an arrestee from posting bail), nor in an amount that is excessive in relation to the valid interests it seeks to achieve, *see* Salerno, 481 U.S. at 754.

However, a detainee's inability to post bail does not inherently make bail excessive. United States v. McConnell, 842 F.2d 105, 107 (5th Cir. 1978) ("[B]ail setting is not constitutionally excessive merely because a defendant is financially unable to satisfy the requirement."); *see also* Pugh v. Rainwater, 572 F.2d 1053, 1069 (5th Cir. 1978) (Coleman, J., concurring) ("[P]eople may not be denied reasonable bail in bailable cases, but they are not entitled to bail on their own terms. . . . If reasonable bail is set and the defendant cannot make it the Constitution does not command that he shall be released."). Furthermore, there is no established constitutional right to a certain type of bond. *See* United States v. James, 674 F.2d 886, 891 (11th Cir. 1982) ("As long as the primary reason in setting bond is to produce the defendant's presence, the final amount, type, and other conditions of release are within the sound discretion of the releasing authority. . . ."); Walden v. Carmack, 156 F.3d 861, 874 (8th Cir. 1998) (holding that there is no Eighth Amendment right to a certain type of bond, and because plaintiff failed to show that clearly established law existed requiring sheriff to accept a property bond in lieu of a cash bond, sheriff was entitled to qualified immunity on plaintiff's claim that he violated Eighth Amendment by requiring a cash bond and refusing to accept a property bond to satisfy bail). To determine whether the Excessive Bail Clause has been violated, the court should look to the valid state interests bail is intended to serve and determine whether bail was greater than necessary to achieve the purposes for which it was imposed. *See* Broussard v. Parish of Orleans, 318 F.3d 644, 651 (5th Cir. 2003) (quoting Salerno, 481 U.S. at 754).

    D.    Supervisory Liability

Plaintiff states he is suing Sheriff Johnson in his individual and official capacities (*see* Doc. 12, Statement of Facts ¶ 2). With regard to the individual capacity claims, it is well settled that supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. *See* Cottone v. Jenne, 362

F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted). Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Id.* (citation omitted). This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999).

Isolated incidents are generally insufficient to establish a supervisor's liability; indeed, the deprivations must be "'obvious, flagrant, rampant and of continued duration . . . .'" Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1308 (11th Cir. 2006) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)). Furthermore, filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See* Harris v. City of Marion, 79 F.3d 56, 58–59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 362 F.3d at 1360 (internal quotation marks and citation omitted).

    E.     Municipal Liability

In addition to Plaintiff's claim against Sheriff Johnson in his individual capacity, Plaintiff sues him in his official capacity as the policymaker with respect to operation of the Walton County Jail (*see* Doc. 12, Statement of Facts ¶ 2). "[A] municipality cannot be held liable under § 1983 on a respondeat superior theory" for the actions of municipal employees. *See* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Municipal liability under § 1983 only exists when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that [municipality's] officers." *Id.* at 694; *see also* Quinn v. Monroe County, 330 F.3d 1320, 1325 (11th Cir. 2003) (stating that "municipalities may be held liable for the execution of a governmental policy or custom"); Davis v. DeKalb County School Dist., 233 F.3d 1367, 1375 (11th Cir. 2000) ("[R]ecovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality' that is, acts which the municipality has officially sanctioned or ordered.") (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 478, 106 S. Ct. 1292, 1298, 89 L. Ed. 2d 452 (1986)). To hold the municipality liable, there must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." Snow ex rel. Snow v. City of Citronelle, Ala., 420 F.3d 1262, 1271 (11th Cir. 2005) (quoting City of Canton v. Harris, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)).

IV.  CONCLUSIONS OF LAW REGARDING MATERIAL FACTS

As previously noted, Plaintiff states he is suing Sheriff Johnson in his individual and official capacities (Doc. 12, Statement of Claims ¶ 2). In determining whether evidence may be considered on summary judgment, the court is mindful of the standard regarding the consideration of hearsay statements included in verified pleadings, affidavits, documents, and other materials submitted pursuant to Rule 56. The general rule is that inadmissible hearsay, meaning an out-of-court statement presented for the purpose of establishing the truth of the content of the statement and that does not fall within an exception to the hearsay rule, may not be considered on a motion for summary judgment. Macuba v. Deboer, 193 F.3d 1316, 1322 (11th Cir. 1999) (citation omitted). The court may consider a hearsay statement if the statement could be "reduced to admissible evidence at trial" or "reduced to admissible form." *Id.* at 1323 (quoting Wright v. Southland Corp.,

187 F.3d 1287 (11th Cir. 1999); Pritchard v. Southern Co. Servs., 92 F.3d 1130, 1135 (11th Cir. 1996); McMillian v. Johnson, 88 F.3d 1573, 1584-85 (11th Cir. 1996)). Thus,

> the out-of-court statement made to the witness (the Rule 56(c) affiant or the deposition deponent) must be admissible at trial for some purpose. For example, the statement might be admissible because it falls within an exception to the hearsay rule, [FN14] or does not constitute hearsay at all (because it is not offered to prove the truth of the matter asserted), [FN15] or is used solely for impeachment purposes (and not as substantive evidence). [FN16]

*Id.* at 1323–24.

In Sheriff Johnson's special report, he contends that the only personal involvement he had with respect to Plaintiff's detention and release from the Jail was his transmission of a memorandum dated May 11, 2005, to Sergeant Hall directing him to "accept the property bond on Randy Campbell, which was presented by his mother per agreement by Judge Wells" (Doc. 29 at 5–6). Sheriff Johnson's affidavits state that he has no personal recollection of ever speaking with Plaintiff; he has no personal knowledge of Plaintiff or the allegations in his complaint other than the fact that he sent a memorandum dated May 11, 2005, to Sergeant Hall; and he has no personal knowledge that any employee of the Sheriff's Office refused to accept a property bond approved by Judge Wells with respect to Plaintiff's release (Doc. 29, Johnson Aff. ¶¶ 2, 6; Doc. 47, Johnson Aff. ¶¶ 2, 3).

Sheriff Johnson additionally contends that there exists no record evidence to show the existence of an unconstitutional policy established by him that caused a violation of Plaintiff's constitutional rights (Doc. 29 at 8). He further contends there is no record evidence that he deliberately chose a policy relating to the amount of time inmates remain housed in the Jail that was unconstitutional (*id.*). Sheriff Johnson has stated in an affidavit that he adheres to the authority and order of a judge to whom an inmate's criminal case is assigned with regard to issues relating to a bond approved for that inmate (*see* Doc. 29, Johnson Aff. ¶¶ 4–5). He also states that it has been his practice and policy that if a court approves a property bond for the release of an inmate housed in the Jail, he would expect Jail staff to carry out the court order with respect to the inmate's release (*see* Doc. 47, Johnson Aff. ¶¶ 4, 5).

Finally, Sheriff Johnson argues that Plaintiff did not remain incarcerated at the Jail in violation of his constitutional rights because if he had been released after August 19, 2004, he would have been immediately transferred to the Okaloosa County Jail, and once he was sentenced in May

of 2005, he could not have been released to the general public until he completed his sentence with the Florida Department of Corrections (Doc. 29 at 8–9). He offers the affidavit of Sergeant Hall in support of this contention (*id*., Hall Aff. ¶¶ 2–5).

In light of Sheriff Johnson's evidence that he was aware on May 11, 2005, that Judge Wells had approved a property bond on the property presented by Plaintiff's mother, and the same day he sent a memo to Sergeant Hall instructing him to accept the bond (Doc. 29, Johnson Aff. ¶ 6, attached memorandum), as well as Sheriff Johnson's statement that he has no personal knowledge that any employee of the Sheriff's Office refused to accept a property bond approved by Judge Wells with respect to Plaintiff (Doc. 47, Johnson Aff. ¶ 3), Plaintiff was required to come forward with evidentiary material demonstrating a genuine issue of fact as to whether (1) Sheriff Johnson knew prior to May 11, 2005 that Judge Wells had approved a property bond and that a Jail employee had refused to accept it; (2) Sheriff Johnson directed his subordinates to refuse to complete the property bond despite his knowledge that the court approved it; or (3) Sheriff Johnson had a custom or policy of refusing to process property bonds involving property located outside Walton County, <u>despite judicial approval of the property bonds</u>.

As previously noted, Plaintiff submitted affidavits of his mother, Harriet Crowder, and his sister, Debarah Griffin, stating that in 2004, Judge Wells personally escorted them to the Jail with the Okaloosa County property documents, and Judge Wells directed the Jail officer to facilitate Plaintiff's release upon confirmation that the property was not homestead. Plaintiff appears to offer Judge Wells' statement to the Jail officer not as evidence of the content of the statements, but as evidence that the Jail employee knew or should have known that Plaintiff was entitled to release upon confirmation that the property was not homestead. Therefore, Judge Wells' statement does not constitute hearsay and may be considered on summary judgment.

Plaintiff also submits the following out-of-court statements by Jail employees: (1) the Jail administrator's statement[3] to Plaintiff's mother and niece, when they returned to the Jail in early 2005 with proof that the Okaloosa County property was not homestead property, that at the direction of Sheriff Johnson, the Jail was not allowed to accept the real estate document as security for

---

[3] Sheriff Johnson identifies Captain Linda Mims as the Jail Administrator (Doc. 29, Johnson Aff. ¶ 3).

Case No.: 3:06cv365/RV/EMT

Plaintiff's property bond and, therefore, Plaintiff would not be released (*see* Doc. 37, Crowder Aff. ¶ 9; K. Griffin Aff. ¶ 4), and (2) statements by Lieutenant Prater and Officer Hubbard in April of 2005 that Sheriff Johnson stated that the Jail would not release Plaintiff on a property bond using property located in Okaloosa County because if Plaintiff failed to appear, the Jail would be required to hire an attorney to force the sale of the property, and the Jail was not about to do that (Doc. 37, Affidavit of Randy Campbell ¶ 11; Campbell Decl. ¶ 12). These statements do not constitute hearsay because Plaintiff is suing Sheriff Johnson in his official capacity, and the statements of Jail employees constitute admissions by a party-opponent, pursuant to Rule 801(d)(2)(D), as the statements are statements by the Sheriff's employees concerning matters within the scope of their employment, made during the existence of the employment relationship. Therefore, the statements of Jail employees may be considered on summary judgment.

Finally, Plaintiff submitted his own affidavit stating that during a pre-trial hearing on April 21, 2005, in his state criminal case, his attorney requested that the presiding judge accept the property documents for the Okaloosa County property (Doc. 37, Campbell Decl. ¶ 11). Plaintiff states the presiding judge denied the request on the ground that, although he had previously approved the property as security, the Sheriff's Department was responsible for processing the bond, and the Jail administration had contacted his office and informed him that Sheriff Johnson's policy prohibited Jail administrators from completing property bonds where the property was not located in Walton County (*id.*). The judicial findings of fact that supported the state court judge's denial of Plaintiff's request to accept the Okaloosa County property are hearsay to the extent Plaintiff offers them as evidence that the policy existed. *See* United States Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1286–87 (11th Cir. 2001) (judicial findings made in separate case by another court are hearsay and cannot be either judicially noticed or admitted under public records exception to hearsay rule; additionally, probative value of findings would be outweighed by danger of unfair prejudice) (citing United States v. Jones, 29 F.3d 1549, 1554 (11th Cir. 1994); Nipper v. Snipes, 7 F.3d 415, 417–18 (4th Cir. 1993)). Therefore, Plaintiff's declaration of the judge's statements or findings during the hearing are not properly considered under Rule 56 to the extent Plaintiff offers them as evidence of the existence of the policy. However, Judge Wells' statement that Jail administration had contacted his office and informed him that Sheriff Johnson's policy prohibited Jail administrators from

completing property bonds where the property was not located in Walton County may be offered as evidence that the <u>Jail administration</u> knew that Judge Wells had previously authorized Plaintiff's release on the property bond.

Whether Sheriff Johnson had a custom or policy of refusing to release inmates on property bonds despite judicial approval of such bonds is a question of fact.  *See* <u>Bruce v. Beary</u>, 498 F.3d 1232, 1249 (11th Cir. 2007) (citing <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 392, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)).  Likewise, the issues of whether Sheriff Johnson knew prior to May 11, 2005, that Judge Wells had approved the property for Plaintiff's bail and that a Jail employee had refused to release Plaintiff, or whether Sheriff Johnson directed an employee to refuse to release Plaintiff despite knowledge that Judge Wells had approved the property, are questions of fact.  Viewing the evidence in the light most favorable to Plaintiff, the evidence would support a jury finding that Sheriff Johnson had a custom or policy of refusing to release detainees on property bonds where real property offered as security for the bonds was located outside Walton County; however, there is no evidence to support a jury finding that Sheriff Johnson's policy directed employees to refuse to release detainees on property bonds <u>despite judicial approval of such bonds</u>, or that Sheriff Johnson subjectively knew that Jail employees were refusing to release detainees despite the posting of court-approved bonds, or that the Sheriff was subjectively aware of a risk that his custom or policy would result in Jail employees refusing to release detainees even though judicially-approved bail had been posted.[4]  Likewise, there is no evidence to support a jury finding that Sheriff Johnson disregarded the risk of a constitutional violation <u>by conduct that was more than negligence</u>.  Because there is no evidence that Sheriff Johnson was personally involved in the alleged due process violation, or that there was a sufficient causal connection between his policies, actions, or omissions to support a basis for liability, Sheriff Johnson is entitled to summary judgment, in both his individual and official capacities, on Plaintiff's due process claim.

Additionally, Sheriff Johnson is entitled to summary judgment on Plaintiff's Eighth Amendment claim of excessive bail.  Under Florida law, the court having jurisdiction to try the

---

[4]Although there is evidence to support a jury finding that certain Jail employees, including the Jail Administrator, knew that Plaintiff's property bond had been judicially approved, thereby entitling Plaintiff to release, there is no evidence that Sheriff Johnson knew that Plaintiff's property bond had been judicially approved.

Case No.: 3:06cv365/RV/EMT

defendant has the sole authority to hear and decide issues regarding bail, including whether a defendant should be released on bail or other conditions, and what that bail or those conditions will be. *See* Fla. Stat. §§ 903.03, 903.046(2). Section 903.046 of the Florida Statutes states that the purpose of bail is to ensure the appearance of the defendant at subsequent proceedings and to protect the community against unreasonable danger from the defendant. Fla. Stat. § 903.046. That section goes on to define the interests that judicial officers are to consider in setting bail, including the following:

> (a)  The nature and circumstances of the offense charged.
> (b) The weight of the evidence against the defendant.
> (c) The defendant's family ties, length of residence in the community, employment history, financial resources, and mental condition.
> (d) The defendant's past and present conduct, including any record of convictions, previous flight to avoid prosecution, or failure to appear at court proceedings. . . .
> (e) The nature and probability of danger which the defendant's release poses to the community.
> (f) <u>The source of funds used to post bail</u>.
> (g) Whether the defendant is already on release pending resolution of another criminal proceeding or on probation, parole, or other release pending completion of a sentence.
> (h) The street value of any drug or controlled substance connected to or involved in the criminal charge. . . .
> (i) The nature and probability of intimidation and danger to victims.
> (j) Whether there is probable cause to believe the defendant committed a new crime while on pretrial release.
> (k) <u>Any other facts that the court considers relevant</u>.

Fla. Stat. § 903.046(2) (emphasis added).

Additionally, Florida law places qualifications on bond sureties, including, that a surety must be a resident of the state or own real estate within the state, and the net worth of the surety and property exempt from execution must be at least equal to the amount specified in the undertaking. Fla. Stat. §§ 903.05, 903.08. Florida law provides that bonds may be administered by select officials in accordance with state and local law. *See generally* Fla. Stat. §§ 903.011–.36.

In the instant case, the evidence viewed in the light most favorable to Plaintiff shows that the reason for Sheriff Johnson's policy of requiring that property presented as security for a bond be located in Walton County, as evidenced by the statements of Lieutenant Prater and Officer

Hubbard, was that the Jail would be required to incur additional expenses to force a sale of out-of-county property if Plaintiff failed to appear for court proceedings.  The undersigned concludes that the county had a valid interest in ensuring that bail bonds were sufficiently secured and that the cost of a forced sale would not exceed the value of the property.  Furthermore, a requirement that property offered as security for a bond be located in the county where the criminal proceedings are pending is not greater than necessary to achieve the purpose of ensuring that bonds are sufficiently secured, because according to the evidence, the costs of effecting a forced sale of property is higher if the property is located in another county.  Therefore, Plaintiff has failed to show that requiring property offered as security for a bond be located in the county where the criminal proceedings are pending rises to the level of an Eighth Amendment violation.  Accordingly, Sheriff Johnson is entitled to summary judgment, in his individual and official capacities, on Plaintiff's Eighth Amendment claim of excessive bail.

Finally, to the extent Plaintiff asserts any state law claims, those claims should be dismissed. It is well established that once Plaintiff's federal claims are dismissed, there remains no independent federal jurisdiction to support the court's exercise of supplemental jurisdiction over the state claims against Defendants.  *See* Baggett v. First National Bank of Gainesville, 117 F.3d 1342, 1352 (11th Cir. 1997).  Title 28 U.S.C. § 1367(c)(3) provides that the district court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction.  *See also* United Mine Workers v. Gibbs, 383 U.S. 715, 725-26, 86 S. Ct. 1130, 1138–39, 16 L. Ed. 2d 218 (1966).  Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction. Baggett, 117 F.3d at 1353 (citing Palmer v. Hospital Authority of Randolph County, 22 F.3d 1559, 1569 (11th Cir. 1994); Executive Software N. Am. v. United States Dist. Court, 15 F.3d 1484, 1493 (9th Cir. 1994); New England Co. v. Bank of Gwinnett County, 891 F.Supp. 1569, 1578 (N.D.Ga.1995); Fallin v. Mindis Metals, Inc., 865 F.Supp. 834, 841 (N.D.Ga.1994)).  Taking these factors into account in this case, the court concludes that Plaintiff's state law claims, to the extent he asserts any, should be dismissed to permit him to pursue his state law claims in a more appropriate forum. While it would be convenient for the Plaintiff to continue litigating his case in this court, this court has a substantial number of original jurisdiction cases awaiting review, and

neither judicial economy nor fairness to other litigants supports retaining jurisdiction of Plaintiff's state claims and delaying justice in other cases. Furthermore, the state court is best equipped to research and rule on matters of state law, and comity would suggest that it should be allowed to do so, particularly since the criminal proceedings arising out of the issues at hand were conducted in that court.

Accordingly it is respectfully **RECOMMENDED**:

1. That Defendant's motion for summary judgment (Doc. 29) be **GRANTED** as to Plaintiff's Fifth, Eighth, and Fourteenth Amendment claims against Sheriff Johnson in his official and individual capacities.

2. That Plaintiff's state law claims, to the extent he asserts any, be **DISMISSED WITHOUT PREJUDICE** to Plaintiff's right to assert them in state court.

3. That judgment be entered accordingly.

At Pensacola, Florida, this 3rd day of January 2008.


*/s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**